Case 2:25-cv-00450-NJB-JVM   Document 37   Filed 03/07/25   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
March 07, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

|  |  |
|---|---|
| IN THE MATTER OF THE COMPLAINT TRINITY TUGS, LLC AS OWNER OF THE M/V BAYLOR TREGRE | § § § § § § § § § CIVIL ACTION NO. 3:24-cv-00327 |

## OPINION AND ORDER

Limitation Petitioner Trinity Tugs, LLC's pending Motion to Transfer requires me to decide where this limitation of liability action should proceed. *See* Dkt. 22. Trinity seeks to transfer this matter to the United States District Court for the Eastern District of Louisiana, where Trinity maintains its principal place of business and where Claimants and all of Claimants' treating physicians reside. Claimants oppose a venue transfer, insisting that Galveston is the appropriate venue because Claimants' alleged injuries occurred on a vessel off the coast of Texas; one Claimant received treatment at the University of Texas Medical Branch at Galveston; and members of the United States Coast Guard Sector Houston-Galveston will be trial witnesses because they rescued Claimants from the sinking vessel and investigated the incident.

Having reviewed the parties' submissions and the applicable law, I find that Trinity has demonstrated that the Eastern District of Louisiana is clearly a more convenient venue than Galveston. The Motion to Transfer is granted.[1]

---

[1] An order transferring venue pursuant to Supplemental Rule F(9) is a non-dispositive matter for which a magistrate judge may issue an Opinion and Order. *See Arena IP, LLC v. New England Patriots, LLC*, No. 4:23-cv-00428, 2023 WL 8711081, at *1 n.1 (S.D. Tex. Nov. 20, 2023) (explaining why "the better view" is that an order transferring venue is not dispositive under the analogous 28 U.S.C. § 1404(a)).

## BACKGROUND

On May 13, 2024, the M/V BAYLOR J. TREGRE, a towing vessel, capsized and sank in rough waters approximately 12 nautical miles off the Texas coast. The approximate location of the incident is captured on the following diagram:



*See* Dkt. 27-2 at 15.

The M/V BAYLOR J. TREGRE is owned by Trinity, a limited liability company formed under the laws of Louisiana whose members are all domiciled in Louisiana. Trinity's principal place of business is located in Galliano, Louisiana, which is in the Eastern District of Louisiana. At the time of the incident, Claimants Richard Hebert and Darien Kelley were aboard the M/V BAYLOR J. TREGRE working as deckhands. Both Hebert and Kelley live in the Eastern District of Louisiana.[2] Two other individuals—Richard Lowery and Sammy Mitchell—were also working on the M/V BAYLOR J. TREGRE when the vessel sank. Lowery

---

[2] Kelley resides in Amite, Louisiana. Hebert resides in Terrebonne Parish, Louisiana.

resides in Irvington, Alabama; Mitchell resides in Kiln, Mississippi. *See* Dkt. 34 at 1.

Members of the United States Coast Guard Sector Houston-Galveston rescued the four crewmembers of the M/V BAYLOR J. TREGRE from a raft in the Gulf of Mexico. A helicopter airlifted Hebert to the University of Texas Medical Branch at Galveston, where he spent three days before returning home to Louisiana.

Just a few days after the M/V BAYLOR J. TREGRE sank, Hebert filed a lawsuit for damages against Trinity in Galveston County Court at Law No. 3. Trinity then filed the present limitation of liability action before this court. Both Hebert and Kelley have filed claims in the limitation action, alleging that they suffered personal injuries resulting from the negligence of Trinity and the unseaworthiness of the M/V BAYLOR J. TREGRE.

With the sole exception of the medical care Hebert received in Galveston, all of Hebert's and Kelley's treating physicians are located in the Eastern District of Louisiana. Hebert has visited four medical providers, all of whom are located in Houma, Louisiana. Kelley has also seen four medical providers in Louisiana—one in Covington, one in Hammond, one in New Orleans, and one in Slidell.

Because this case "is[,] at its core[,] a dispute between two Louisiana residents and a Louisiana limited liability company" with most relevant witnesses located in—or close to—the Eastern District of Louisiana, Trinity requests that this case be transferred to the Eastern District of Louisiana for the convenience of the parties and witnesses. Dkt. 22-1 at 6.

## LEGAL STANDARD

The Limitation of Liability Act of 1851 "allows a vessel owner to limit its liability for damage or injury . . . [by] establish[ing] a limited fund equal to the value of the vessel and consolidat[ing] all potential claims before one federal district court." *In re Marquette Transp. Co. Gulf-Inland*, No. 3:18-cv-00074, 2018 WL 4443141, at *2 (S.D. Tex. Sept. 4, 2018) (citing 46 U.S.C.

§ 30501). Supplemental Rule F(9) governs the proper venue for a limitation proceeding. It provides that when, as here, a vessel has not been attached or arrested, "[t]he complaint shall be filed in any district . . . in which the owner has been sued with respect to any such claim." FED. R. CIV. P. SUPP. R. F(9).[3] After a vessel owner has filed a limitation complaint, the district court may transfer the case to any district "[f]or the convenience of parties and witnesses, [and] in the interest of justice." *Id.* "The Rule F(9) transfer provision is similar to and analyzed under the same framework as the general transfer provision found under 28 U.S.C. § 1404(a)." *In re Marquette*, 2018 WL 4443141, at *2; *see also Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963) (analogizing Rule 9(F)'s predecessor, Admiralty Rule 54, to the transfer analysis under § 1404(a)); *In re Complaint & Petition of Triton Asset Leasing GmbH*, 719 F. Supp. 2d 753, 760 (S.D. Tex. 2010) ("Rule F(9) requests are more comparable to a transfer sought under 28 U.S.C. § 1404(a).").

As is the case with § 1404, district courts enjoy "broad discretion in deciding whether to order a [venue] transfer" under Rule F(9). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) ("*Volkswagen II*") (quotation omitted). In determining whether to transfer venue, a district court must consider several public and private factors relating to the convenience of parties and witnesses, "none of which are given dispositive weight." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors concern: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in

---

[3] Because Hebert filed a Jones Act claim against Trinity in the Galveston County Court of Law, the Southern District of Texas is the only place the limitation action could have been filed.

4

having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law." *Id.*

A motion to transfer venue for convenience should be granted if "the movant demonstrates that the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 315; *see also Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) ("[T]he standard [for venue transfer based on convenience] is not met by showing one forum is more likely than not to be more convenient, but instead the party [seeking transfer] must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.").

## ANALYSIS

**A.    RULE F(9) PERMITS A LIMITATION ACTION TO BE TRANSFERRED FOR CONVENIENCE TO *ANY* DISTRICT—NOT JUST A DISTRICT WHERE THE ACTION MIGHT HAVE INITIALLY BEEN BROUGHT**

Kelley first argues that a motion to transfer under Rule F(9) requires a two-step inquiry: (1) whether the judicial district to which transfer is sought would have been a district court in which the limitation action could have been filed; and (2) whether transfer is justified for the convenience of the parties and witnesses, using public and private factors to guide the analysis. *See* Dkt. 28 at 2. Because Trinity cannot satisfy the first step (that is, demonstrate that the Eastern District of Louisiana is a district where this limitation action could have been filed), Kelley contends that I must summarily deny the motion to transfer venue.

Although it is true that a two-step analysis applies when a district court considers whether to transfer venue under § 1404(a), the first step does *not* apply to a motion to transfer venue under Rule F(9). "When analyzing motions to transfer under Rule F(9), courts instead proceed directly to considering the convenience of parties and witnesses, in the interest of justice." *In re Grebe Shipping LLC*, 448 F. Supp. 3d 161, 165 (D. Conn. 2020) (quotation omitted).

To understand why motions filed under § 1404(a) and Rule F(9) are treated slightly differently, one need look only at the text of the two provisions. Under

5

§ 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action *to any other district or division where it might have been brought* or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (emphasis added). This language specifically limits transfer to a district where the action might have been brought, unless the parties consent to the transfer.

Rule F(9) also has a broad provision addressing a change of venue, but its language is slightly different. It provides, in pertinent part, that "[f]or the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to *any* district." FED. R. CIV. P. SUPP. R. F(9) (emphasis added). Rule F(9) does not limit the transfer of a limitation case to a district where the action might have been brought. In fact, the rule explicitly allows transfer of an admiralty case to *any* district for the convenience of the parties and witnesses. *See In re Grebe Shipping LLC*, 448 F. Supp. 3d at 165 ("Because the Petitioners' motion to transfer is brought under Rule F(9), rather than solely under 28 U.S.C. § 1404(a), it is not relevant whether the Limitation Action could have been brought in the [transferee district] initially."); *In re BOPCO, L.P.*, No. H-12-1113, 2012 WL 4068682, at *1 (S.D. Tex. Sept. 14, 2012) ("Rule F(9) was drafted to conform closely to the language of the federal transfer statute, 28 U.S.C. [§] 1404(a), except that Rule F(9) allows transfer to any district for convenience, while [§] 1404(a) only permits transfer to a district where the action might have been brought or where all parties consent to have it heard."); *In re Cenargo Navigation Ltd.*, No. 98 Civ. 4481, 1998 WL 1108990, at *2 (S.D.N.Y. Oct. 26, 1998) ("The standards for transfer under [Rule F(9)] . . . are the same as under [§ 1404(a)] save that a limitation proceeding may be transferred to any district without regard to whether the action could have been brought there initially.").[5]

---

[5] I acknowledge that my opinion in *In re Orion Marine Construction, Inc.*, No. 3:20-cv-00309, 2020 WL 8083679, at *2 (S.D. Tex. Dec. 21, 2020), suggests that a party seeking to transfer a limitation action must first demonstrate that the judicial district to which

6

Having determined that Trinity does not have to show that this limitation action could have been brought in the Eastern District of Louisiana to seek a transfer there, I now turn to analyzing whether a transfer to the Eastern District of Louisiana would be "[f]or the convenience of parties and witnesses, in the interest of justice." FED. R. CIV. P. SUPP. R. F(9).

### B. THE EASTERN DISTRICT OF LOUISIANA IS CLEARLY A MORE CONVENIENT VENUE

To determine whether transfer is appropriate under Rule F(9), I must assess the four private interest factors and the four public interest factors.

#### 1. *The Private Interest Factors*

##### a. Relative Ease of Access to Sources of Proof

The Fifth Circuit has explained:

> The first [private interest] factor focuses on the location of documents and physical evidence relating to the case. The question is *relative* ease of access, not *absolute* ease of access. That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case. But when the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis.

*In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up).

Here, there is no question that the vast majority of relevant documents are located in the Eastern District of Louisiana. This includes medical records from Claimants' treating physicians as well as documents found at Trinity's Louisiana office relating to its claims and defenses. To my knowledge, the only relevant documents located in Texas are 38 pages of Hebert's medical records from the University of Texas Medical Branch at Galveston that have already been produced. Most, if not all, of the relevant documents will be available electronically, as evidenced by Trinity's production of 2,398 pages electronically as part of its initial

---

transfer is sought is a district where the claim could have originally been filed. That was an incorrect statement of the law.

disclosures. Accordingly, I expect that the relevant documents will be as easily available in the Southern District of Texas as the Eastern District of Louisiana.

As far as the physical evidence relating to the case is concerned, I am not aware of any such evidence being available. The M/V BAYLOR J. TREGRE was salvaged and raised from the ocean floor in July 2024, and then sold for scrap. No matter where this case proceeds, there will be no physical evidence.

Overall, the relative ease of access to sources of proof is neutral. It does not favor retaining the case in the Southern District of Texas or transferring the case to the Eastern District of Louisiana.

### b. Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses

The second private interest factor focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen II*, 545 F.3d at 315. In considering this factor, it is important to remember that the Federal Rules of Civil Procedure provide district courts with the authority to compel non-party witnesses "to attend a trial, hearing, or deposition" that is conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A). The second private interest factor favors transfer where non-party witnesses are outside the Southern District of Texas's subpoena power for both depositions and trial. *See Volkswagen II*, 545 F.3d at 316. "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630–31 (5th Cir. 2022) (quotation omitted).

Although eight medical providers are located in the Eastern District of Louisiana, there is no indication that those witnesses would be unwilling to testify in the Southern District of Texas. That said, a transfer to the Eastern District of Louisiana would unquestionably be more convenient for those eight medical providers. On the flip side, there is only one medical provider located in Texas who would benefit from a convenience standpoint by this case staying in Galveston. All

in all, I believe this factor *slightly* favors a transfer to the Eastern District of Louisiana.

Before leaving this factor, I must address Hebert's argument that the Southern District of Texas is a more convenient venue for those members of the United States Coast Guard Sector Houston-Galveston who (1) participated in the search and rescue mission and (2) investigated the capsizing and sinking of the M/V BAYLOR J. TREGRE. Hebert contends that these individuals are "material witnesses" and retaining the case in Galveston will be more convenient for them. Dkt. 27 at 5. Long story short: even if these unidentified Coast Guard members currently live or work in the Houston-Galveston area,[6] their presence around the Gulf Coast is wholly irrelevant to the convenience analysis because federal regulations prohibit Coast Guard members from testifying at trial.

"Federal agencies are permitted to promulgate regulations, known as *Touhy* regulations, governing the disclosure of information pursuant to a request," including a subpoena requesting testimony of government employees. *CF Indus., Inc. v. ATF*, 692 F. App'x 177, 181 (5th Cir. 2017) (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951)). The Department of Transportation ("DOT") has enacted such regulations addressing the testimony of DOT employees, including members of the Coast Guard, in litigation between private parties. *See* 49 C.F.R. Part 9.[7] As a general rule, Coast Guard employees are prohibited from providing testimony or producing or disclosing Coast Guard material in legal proceedings. *See* 49 C.F.R. § 9.5. Those regulations further provide that employees

---

[6] As Trinity observes: "Since Hebert has not identified the personnel he seeks to call as witnesses, there is no way of knowing whether they are even stationed in Texas at this point or when they might be re-assigned to another location altogether." Dkt. 29 at 5.

[7] The purpose of these DOT regulations is to "[c]onserve the time of employees for conducting official business," to "[m]inimize the possibility of involving the Department in controversial issues not related to its mission," to "[m]aintain the impartiality of the Department among private litigants," to "[a]void spending the time and money of the United States for private purposes," and "[t]o protect confidential, sensitive information and the deliberative processes of the Department." 49 C.F.R. § 9.1(b).

are strictly prohibited from ever providing testimony at trial or a court hearing. *See id.* § 9.9(d) ("An employee shall not provide testimony at a trial or hearing."). At most, the testimony of a Coast Guard employee is "limited to a single deposition, affidavit, or set of interrogatories, concerning the circumstances (e.g. an accident) from which the proceeding arose." *Id.* "The proper method for obtaining testimony or records from an employee is to submit a request to agency counsel." *Id.* § 9.9(a). Even then, agency counsel has the authority to permit—or refuse—the requested testimony. *See id.* §§ 9.1(c), 9.11(e).

On top of the regulations found in 49 C.F.R. Part 9, federal law provides that no part of a Coast Guard marine casualty investigation "shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States." 46 U.S.C. § 6308(a). Taken together, it is abundantly clear that no Coast Guard employee will ever be permitted to testify at trial in this case concerning the May 13, 2024 search and rescue mission or the investigation into the sinking of the M/V BAYLOR J. TREGRE. As a result, it makes no difference to the convenience of Coast Guard employees whether this case proceeds in Louisiana or Texas. In either case, they will not be allowed to testify at trial. If their depositions are allowed, they will take place wherever those Coast Guard employees live or work, whether it be Texas, Louisiana, or somewhere else. All in all, the location of the Coast Guard employees does not tilt the transfer analysis one way or the other.

      **c.**    **Cost of Attendance for Willing Witnesses**

"The third private interest factor, which is probably the single most important factor in the transfer analysis, considers the cost of attendance for willing witnesses." *Orion Marine*, 2020 WL 8083679, at *4 (quotation omitted). "Employees of a party or witnesses that a party otherwise controls are often willing witnesses in effect because compulsory process is not necessary to ensure that these witnesses attend trial." *Roberts v. Paris Reg'l Med. Ctr.*, No. 2:18-cv-00191, 2018 WL 4221861, at *4 (E.D. Tex. Sept. 5, 2018). As one district court explained:

"The inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time, meal, lodging expenses, and time away from their regular employment. The Court must also consider the personal costs associated with being away from work, family, and community." *Sandbox Logistics LLC v. Grit Energy Sols. LLC*, No. 3:16-cv-12, 2016 WL 4400312, at *5 (S.D. Tex. Aug. 17, 2016) (quotation omitted).

The parties have identified only two potential willing witnesses in this case: Lowery and Mitchell—the two crewmembers of the M/V BAYLOR J. TREGRE who have not filed claims in this limitation proceeding. As noted, Lowery lives in Irvington, Alabama, and Mitchell lives in Kiln, Mississippi. Both cities are much closer to the Eastern District of Louisiana than the Galveston Division of the Southern District of Texas. As such, it is obviously far more convenient for Lowery and Mitchell if this case proceeds in Louisiana.

Tellingly, Claimants are unable to identify a single willing witness who lives or works in the Southern District of Texas. Even if I were to assume, for the sake of argument, that the treating doctors were all willing witnesses, eight of the nine medical providers are located in the Eastern District of Louisiana, so that is, on balance, the more convenient venue for them. This factor thus weighs heavily in favor of transfer to the Eastern District of Louisiana.

### d. Other Practical Problems

The fourth private interest factor district courts should consider in deciding a motion to transfer is "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. The Fifth Circuit has clarified "that garden-variety delay associated with transfer is not to be taken into consideration when ruling on a . . . motion to transfer." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013). No party makes any argument as to why this factor impacts the transfer analysis. Thus, I accord this factor no weight.

### 2. *The Public Interest Factors*

#### a. **Administrative Difficulties Flowing from Court Congestion**

The first public interest factor asks "not whether transfer will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Hillestad v. LLOG Expl. Co.*, No. 3:17-cv-00341, 2018 WL 4938708, at *7 (S.D. Tex. Sept. 20, 2018) (cleaned up). According to the most recent statistics available, the median time from filing to disposition of civil cases is 10.2 months in the Eastern District of Louisiana and 7.6 months in the Southern District of Texas.[8] But those statistics are somewhat deceiving because the docket control order in this case sets docket call for February 2026, with trial planned for March/April 2026. *See* Dkt. 26 at 2. That means if the case proceeds in the Southern District of Texas, the trial will occur 16 to 17 months after the case was filed. I do not know when the case will go to trial if it is transferred to the Eastern District of Louisiana. Given this, I do not give this factor much weight.

#### b. **Local Interest in Having Localized Disputes Decided at Home**

"This public interest factor considers whether the dispute at issue has a closer 'factual connection' with the transferee or the transferor venue." *Orion Marine*, 2020 WL 8083679, at *6 (quoting *Volkswagen I*, 371 F.3d at 206); *see also Def. Distributed*, 30 F.4th at 435 ("The second public interest factor . . . most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." (quotation omitted)). "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Orion Marine*, 2020 WL 8083679, at *6 (quotation omitted).

---

[8] U.S. COURTS, *Median Time From Filing to Disposition of Civil Cases, by Action Taken*, FEDERAL JUDICIAL CASELOAD STATISTICS TABLE C-5 (Mar. 31, 2024), https://www.uscourts.gov/sites/default/files/data_tables/fjcs_c5_0331.2024.xlsx.

The incident giving rise to this case occurred approximately 13.8 miles off the Texas shoreline in the Gulf of Mexico. The M/V BAYLOR J. TREGRE departed from Louisiana en route to an offshore destination, and would have returned to Louisiana had it not capsized and sunk. The vessel was never scheduled to stop in Texas. "The residents of Texas might have some natural curiosity about a [v]essel sinking in the Gulf of Mexico . . . , but it does not impact them directly." Dkt. 30 at 8. In essence, this is a dispute between two Louisiana residents and a Louisiana limited liability company. The connection to Texas is, at best, minimal. Accordingly, this factor weighs in favor of transfer.

### c. Familiarity of the Forum with the Law that Will Govern the Case

This case involves the application of maritime law, an area with which judges in both the Eastern District of Louisiana and the Southern District of Texas are quite familiar. Accordingly, this factor is neutral.

### d. Avoidance of Conflict of Laws or Application of Foreign Law

The final public interest factor asks whether transferring the case would raise any "unnecessary problems in conflict of laws, or in the application of foreign law." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016) (quotation omitted). This factor is neutral because both the Eastern District of Louisiana and Southern District of Texas are equally capable of addressing any conflict of law or foreign law issues that may arise.

## CONCLUSION

On balance, I find that the private and public factors weigh in favor of transferring this case to the Eastern District of Louisiana. As explained, three of the factors favor transfer, five are neutral, and none favor retaining this case in the Southern District of Texas. In a nutshell, it makes much more sense for the convenience of the parties and the witnesses for this case to proceed in the Eastern District of Louisiana. Accordingly, I conclude that Defendants have satisfied their

burden of establishing that the Eastern District of Louisiana is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315.

Accordingly, the Motion to Transfer (Dkt. 22) is granted. Pursuant to Rule F(9), this case is transferred to the United States District Court for the Eastern District of Louisiana.

SIGNED this 7th day of March 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE